

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| IOWA PROTECTION AND ADVOCACY SERVICES, INC. | ) ) ) | NO. 4:02-CV-10112 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| RES-CARE PREMIER, INC., d/b/a VICTORIAN ACRES REHABILITATION, | ) ) ) ) | MEMORANDUM IN SUPPORT OF PLAINTIFF'S REQUEST FOR A TEMPORARY RESTRAINING ORDER |
| Defendant. | ) ) ) | |

**TABLE OF CONTENTS**

Page

FACTUAL BACKGROUND ........................................................................................................1

I. STANDARD FOR TEMPORARY RESTRAINING ORDER ....................................2

II. IOWA P & A HAS ESTABLISHED VICTORIAN ACRES' DENIAL OF ACCESS VIOLATES THE PAIR PROGRAM ................................................................3

    A. Congress Created the PAIR Program to Provide for Independent Systems to Conduct Investigations Independent from State Authorities to Protect the Legal and Human Rights of Individuals with Disabilities ....................................................................................3

    B. The PAIR Program and PADD Act Have Two Access Provisions, Both of Which Iowa P & A has Satisfied ..................................................4

        1. Victorian Acres has not Provided any Competent Evidence Demonstrating the Complaint Received by Iowa P & A was not from the Guardian ....................................................................4

        2.     Even if the Court Determines Iowa P & A has Failed to Comply with the Provision Requiring it to Contact the Guardians of the Victorian Acres Residents, Iowa P & A is to have Access within Twenty-Four Hours Irrespective of Whether it has Secured the Consent of the Guardians ...........................7

    C.     Iowa P & A is not Required by Statute to Give Victorian Acres Advance Notice of its Intent to Investigate..................................................10

    D.     Iowa P & A's Authority Under Federal Law to Investigate is Independent from any Investigation Done by the Department of Inspections and Appeals ..........................................................................10

    E.     Victorian Acres has Violated the PAIR Program by Denying Iowa P & A Access to its Residents and their Records because Iowa P & A has Determined Probable Cause Exists to Believe the Residents are Being Subjected to Abuse and Neglect ......................................11

III.    IOWA P & A WILL BE IRREPARABLY HARMED IF VICTORIAN ACRES IS PERMITTED TO CONTINUE TO DENY ACCESS ..............................13

IV.    IN BALANCING THE RESPECTIVE HARMS, IT IS CLEAR VICTORIAN ACRES WILL NOT BE HARMED BY ALLOWING IOWA P & A ACCESS TO ITS RESIDENTS AND RECORDS AND ACCESS IS IN THE PUBLIC INTEREST..............................................................14

CONCLUSION..................................................................................................................14

## FACTUAL BACKGROUND

On or about January 29, 2002, Iowa Protection and Advocacy Services, Inc. (hereinafter "Iowa P & A") received a report that a resident of Res-Care Premier, Inc. (hereinafter "Res-Care"), d/b/a Victorian Acres Rehabilitation (hereinafter "Victorian Acres") had been physically assaulted. On January 31, 2002, David Parr from Iowa P & A contacted Eric Cantu at Victorian Acres. Mr. Parr informed Mr. Cantu of Iowa P & A's authority and requested information regarding the assault. Mr. Cantu refused to release any information based on client confidentiality.

The next day, Marsha Gelina, Bonnie Kerns, and Mr. Parr, investigators from Iowa P & A, went to Victorian Acres to investigate the reported assault. Mr. Cantu met the investigators in the parking lot and asked them to leave. Melissa Gonzalez then came out of the facility and greeted the investigators. In accordance with Iowa P & A's mandate, the investigators requested access to the facility to conduct an investigation into the alleged abuse. Mr. Parr told Ms. Gonzalez that Iowa P & A had probable cause to believe that a physical assault had taken place at Victorian Acres and that Iowa P & A was there to investigate. Ms. Gonzalez stated that Victorian Acres is a private facility, and asked the investigators to leave. Mr. Parr presented Ms. Gonzalez with a letter outlining Iowa P & A federal authorization and Iowa P & A's request for specific information. (Ex. B attached to Plaintiff's Complaint, and Defendant's Exhibit 1).[1] Ms.

---

[1] While Defendant's Exhibit 1 contains a typographical error regarding Iowa P & A's reason for the on-site visit, Victorian Acres was well aware of the reason for Iowa P &A's on-site visit. At the hearing, Mr. Cantu admitted Mr. Parr contacted him regarding the alleged incident of abuse. Mr. Cantu went to so far as to identify the name of the individual during the hearing. Moreover, Plaintiff's Exhibit B and Defendant's Exhibit 1 do not differ with respect to the legal authority upon which Iowa P & A's access authority is based.

Gonzalez stated that she would need to confer with the facility administrator and legal counsel regarding the letter.[2]

A person named Julie then came out and stated that Iowa P & A was on private property and asked the investigators to leave. Julie refused to identify her last name. Ms. Gelina asked if Julie understood the federal mandate. She responded by stating the investigators were on private property and needed to leave.

Mr. Parr proceeded to take photographs of the facility. He was then instructed to leave, or the authorities would be called.[3]

Iowa P & A's investigators attempted in good faith to discuss their right to access with Victorian Acres. Victorian Acre's conduct throughout this process has interfered with and hampered Iowa P & A's purpose, and has caused irreparable harm to its investigation.

## I.    STANDARD FOR TEMPORARY RESTRAINING ORDER

In determining whether a temporary restraining order should issue, the federal courts apply the same standard applied when determining whether a preliminary injunction should issue. See Heather K. v. City of Mallard, 887 F. Supp. 1249, 1256 (N.D. Iowa 1999). The applicable standard is set forth in Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). In determining whether a temporary restraining order should issue, the Court should consider: (1) Iowa P & A's likelihood of success on the merits; (2) the threat of irreparable harm to Iowa P & A; (3) the balance between the harm to Iowa P & A and the harm other interested

---

[2] At the hearing, Mr. Cantu reported that Ms. Gonzales is from the corporate headquarters for Res-Care.

[3] Subsequent to visiting the facility, Iowa P & A received additional allegations of ongoing abuse and neglect to the residents of Victorian Acres. Based on these allegations, Iowa P & A determined it had probable cause to believe all of the residents at Victorian Acres had been subject to abuse or neglect.

parties would experience if the temporary relief is granted; and (4) whether the granting of the temporary relief is in the public interest. U.S. Ecology, Inc. v. State of Nebraska, 210 F.3d 887, 898 (8th Cir. 2000) (noting standard for issuance of a preliminary injunction).

## II. IOWA P & A HAS ESTABLISHED VICTORIAN ACRES' DENIAL OF ACCESS VIOLATES THE PAIR PROGRAM

### A. Congress Created the PAIR Program to Provide for Independent Systems to Conduct Investigations Independent from State Authorities to Protect the Legal and Human Rights of Individuals with Disabilities

Congress enacted the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (hereinafter "PADD Act") in response to the inhumane and despicable conditions which had been discovered at New York's Willowbrook State School for persons with developmental disabilities "to protect the human and civil rights of this vulnerable population." Alabama Disabilities Advocacy Program v. Tarwater Dev. Ctr., 97 F.3d 492, 494 (11th Cir. 1996); Wisconsin Coalition for Advocacy v. Czaplewski, 131 F. Supp. 2d 1039, 1045 (E.D. Wis. 2001) (citing to earlier version of the PADD Act). As a result, Congress enacted the PADD Act to provide for allotments to support a protection and advocacy system in each State to protect the legal and human rights of individuals with developmental disabilities." 42 U.S.C. § 15041 (2000).

Congress next enacted the Protection and Advocacy for Individuals with Mental Illness Act (hereinafter "PAIMI Act") to provide for state allotments to establish protection and advocacy systems to "(A) protect and advocate the rights of individuals with mental illness; and (B) investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." Id. § 10803.

Congress later determined a system should be created

to protect the legal and human rights of individuals with disabilities who -
    (A) need services that are beyond the scope of services authorized to be provided by the client assistance program under section 732 of this title; and
    (B)(i) are ineligible for protection and advocacy programs under subtitle C of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 [42 U.S.C. § 15041 et seq.] because the individuals do not have a developmental disability, as defined in section 102 of such Act (42 U.S.C. 6002); and
    (ii) are ineligible for services under the Protection and Advocacy for Mentally Ill Individuals Act of 1986 (42 U.S.C. 10801 et seq.) because the individuals are not individuals with mental illness as defined in section 102 of such Act (42 U.S.C. 10802).

29 U.S.C. § 794e(a)(1)(A)-(B)(ii).[4]  This program is referred to as the "PAIR Program".

The receive federal funding under the PAIR Program, States are required to create an eligible system that will:

    (1) have in effect a system to protect and advocate the rights of individuals with disabilities;
    (2) have the same general authorities, including access to records and program income, as are set forth in subtitle C of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 [42 U.S.C. § 15941 et seq.];
    (3) have the authority to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within the State or the American Indian consortium who are individuals described in subsection (a)(1); . . .

29 § 794e(f)(1)-(3).  The State of Iowa has designated Iowa P & A as an appropriate agency for conducting such independent investigations.  (Complaint ¶ 8).

### B.     The PAIR Program and PADD Act Have Two Access Provisions, Both of Which Iowa P & A has Satisfied

    1.     <u>Victorian Acres has not Provided any Competent Evidence Demonstrating the Complaint Received by Iowa P & A was not from the Guardian</u>

---

[4] Mr. Cantu testified the residents of Victorian Acres are individuals with traumatic brain injuries, which are disabilities covered under the PAIR Program, given their disabilities are not covered by the PADD or PAIMI Acts.  <u>See</u> 29 U.S.C. § 794e(a)(1)(B)(i)-(ii).

Under the PAIR Program and PADD Act Iowa P & A is afforded access to the records of:

> (i) any individual with a developmental disability who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access;
> (ii) any individual with a developmental disability, in a situation in which-
>> (I) the individual, by reason of such individual's mental or physical condition, is unable to authorize the system to have such access;
>> (II) the individual does not have a legal guardian, conservator, or other legal representative, or the legal guardian of the individual is the State; and
>> (III) a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect; and
> (iii) any individual with a developmental disability in a situation in which-
>> (I) the individual has a legal guardian, conservator, or other legal representative;
>> (II) a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse and neglect;
>> (III) such representative has been contacted by such system, upon receipt of the name and address of such representative;
>> (IV) such system has offered assistance to such representative to resolve the situation; and
>> (V) such representative has failed or refused to act on behalf of the individual;

42 U.S.C. § 15043(a)(2)(I)(i)-(iii).

In this case, Iowa P & A received a complaint from a concerned individual who wishes to remain anonymous that a resident at Victorian Acres was injured by a staff member of Victorian Acres. The individual contacted Iowa P & A and reported that a staff member dragged a resident outside of the building in late December without his pants on, which resulted in a five-inch wound to the resident's backside and buttocks. Based on this complaint, Iowa P & A determined

it had probable cause to believe the resident had been subject to abuse and neglect. See 29 U.S.C. § 794e(f)(2); 42 U.S.C. § 15043(a)(2)(I)(ii)(III).

For the first time in its brief Victorian Acres now contends that Iowa P & A has failed to make the requisite showing that it contacted the guardian of the resident as required by the PAIR Program. (Defendant's Memorandum at 4). Victorian Acres has presented no proof that Iowa P & A was not contacted by the guardian for the resident. Moreover, at the request of the individual, Iowa P & A is keeping that individual's identity anonymous due to fear of retaliation by Victorian Acres. Iowa P & A has been and is willing to release the identity of the individual to the Court in camera, should the Court deem it necessary to know the actual identity of the individual. Due to an agreement with the individual, Iowa P & A is unwilling to release their identity in a public venue.

In addition to the probable cause based on the above-incident, a former staff member from Victorian Acres contacted Iowa P & A and reported that other residents had been subject to abuse and neglect. From this report, Iowa P & A determined it had probable cause to believe all of the residents of Victorian Acres had been subject to abuse and neglect. Under the PAIR Program, Iowa P & A has a right to timely access to the residents of Victorian Acres and their records. See 29 U.S.C. § 794e(f)(2); 42 U.S.C. § 15043(a)(2)(I)(i)-(iii); Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs, L.L.C., 152 F. Supp. 2d 1150, 1168-72 (N.D. Iowa 2001) (holding Iowa P & A is afforded access to residents and their records under the PADD and PAIMI Acts).

2.  <u>Even if the Court Determines Iowa P & A has Failed to Comply with the Provision Requiring it to Contact the Guardians of the Victorian Acres Residents, Iowa P & A is to have Access within Twenty-Four Hours Irrespective of Whether it has Secured the Consent of the Guardians</u>

Independent from the above access provisions, Iowa P & A is to have

> (J)(i) have access to the records of individuals described in subparagraphs (B) and (I), and other records that are relevant to conducting an investigation, under circumstances described in those subparagraphs, not later than 3 business days after the system makes a written request for the records involved; and
> (ii) **have immediate access, not later than 24 hours** after the system makes such a request, to the records **without consent from another party**, in a situation in which services, supports, and other assistance are provided to an individual with a developmental disability--
> (I) **if the system determines there is probable cause to believe that the health or safety of the individual is in serious and immediate jeopardy**; . . .

42 U.S.C. § 15043(a)(2)(j)(ii)-(ii)(I) (emphasis added). Under 42 U.S.C. section 15043(a)(I)(iii)(I)-(V), prior to commencing its investigation, Iowa P & A is required to contact the legal guardians, conservators, or other legal representatives of the Victorian Acres' residents. However, in the case of a death of an individual or if Iowa P & A determines probable cause exists "to believe the health or safety of the individual is in serious or immediate jeopardy", Iowa P & A is to have "**immediate access, not later than 24 hours** after [Iowa P & A] makes such a request, to the records **without consent from another party**." 42 U.S.C. § 15043(a)(J)(ii)(I)-(II) (emphasis added).

The repealed version of the PADD Act did not contain the provision granting a protection and advocacy system immediate access within twenty-four hours without the consent. <u>See</u> 42 U.S.C. § 6042 (1994), <u>repealed by</u> Developmental Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. § 15001, *et seq.* In determining the effect of the change in the PADD Act, it

7

is necessary to look to the rules of statutory interpretation. In interpreting a statute, the Eighth Circuit begins its analysis by looking at:

> ... the language of the statute itself. If the plain language of the statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary. Therefore, if the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end. If, on, the other hand, the language of the statute is ambiguous, we should consider "the purpose, the subject matter and the condition of affairs which lead to its enactment." When the meaning of a statute is questionable, it should be given a sensible construction and construed to effectuate the underlying purposes of the law.

Dowd v. United Steelworkers of Am., 253 F.3d 1093, 1099 (8th Cir. 2001) (quoting United States v. McAllister, 225 F.3d 995, 998 (8th Cir. 1997)). "Absent clearly expressed legislative intent to the contrary, the language is regarded as conclusive." Watson v. Ray, 192 F.3d 1153, 1156 (8th Cir. 1999) (quoting United States v. Vig, 167 F.3d 443, 447 (8th Cir. 1999); Minn. v. Heckler, 718 F.2d 852, 860 (8th Cir. 1983)).

In looking at the 2000 PADD Act, it is evident the provision granting Iowa P & A "immediate access, not later than 24 hours after [Iowa P & A] makes such a request, to the records without consent from another party" refers to legal guardians, conservators, and legal representatives. 42 U.S.C. § 15043(a)(J)(ii)(I)-(II). In the 2000 PADD Act the only references to consent pertain to legal guardians, conservators, and legal representatives. See id. §§ 15043(a)(I)(i), (a)(I)(iii)(I)-(V). For example, section 15043(a)(I)(i), provides Iowa P & A access where the "individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized [Iowa P & A] to have such access." Likewise, section 15043(a)(I)(iii)(I)-(V) provides Iowa P & A access where: (1) the "individual has a legal guardian, conservator, or other legal representative"; (2) Iowa P & A has received a complaint regarding the treatment of the individual, or where Iowa P & A has "probable cause to believe

that such individual has been subject to abuse and neglect"; (3) Iowa P & A has contacted the representative after receiving their name and address; (4) Iowa P & A "has offered assistance to such representative"; and (5) the representative "has failed or refused to act on behalf of the individual". Therefore, based on the plain meaning of the statute, the only possible interpretation of the phrase "**immediate access, not later than 24 hours** after [Iowa P & A] makes such a request, to the records **without consent from another party**" is that Iowa P & A need not obtain consent from the legal representatives if such individuals cannot be reached within 24 hours of the request for access to the facility. Id. § 15043(a)(J)(I)(ii) (emphasis added).

An interpretation requiring actual notice to legal guardians, conservators, and legal representatives beyond the twenty-four hour period in the case of a death or where Iowa P & A has probable cause to believe the health or safety of a resident of Victorian Acres is in serious and immediate jeopardy would frustrate and undermine the clear intent of Congress. For example, if Iowa P & A attempted, but was unable to contact the legal representative of a Victorian Acres' resident, it would be unable to access the individual and their records because: (1) the representative would be unable to grant Iowa P & A access in accord with 42 U.S.C. section 15043(a)(I)(i); and (2) representative would not have "failed or refused to act on behalf of the individual" as required by 42 U.S.C. section 15043(a)(I)(iii)(I)-(V). Congress established the PAIR Program to address the need for protection and advocacy system's to advocate on behlf of individuals with disabilities not covered by the PADD and PAIMI Acts. 29 U.S.C. § 794e(a)(1)(A)(B). Without the ability to access such individuals, Iowa P & A cannot fulfill its congressional mandate "to protect the legal and human rights of individuals with disabilities." Id. § 794e(a).

In this case, following the call from a concerned individual, Iowa P & A determined probable cause existed that a resident at Victorian Acres may have been subject to abuse or neglect based on a report that a staff member dragged a resident outside without his pants on, which resulted in five inch wound to the resident's backside and buttocks. Moreover, Iowa P & A determined it had probable cause to believe the health and safety of the residents at Victorian Acres was in serious and immediate jeopardy based on the report of abuse it received from the former employee. Based on this probable cause finding, Iowa P & A had the right to immediate access, not later than twenty-four hours after making its requests for access.

**C.      Iowa P & A is Not Required by Statute to Give Victorian Acres Advance Notice of its Intent to Investigate**

At the hearing, Victorian Acres argued that Iowa P & A failed to apprise it that it was coming to investigate. The access provisions of the PAIR Program and PADD Act do not require Iowa P & A to provide advance notice to the facility prior to making an on-site visit. See 29 U.S.C. § 794e(f)(2); 42 U.S.C. § 15043(a)(2)(I)-(J). Furthermore, prior to arriving at the facility, Mr. Parr contacted Mr. Cantu and requested access to information concerning the reported abuse. Mr. Cantu refused to provide any information to Iowa P & A.

**D.      Iowa P & A's Authority Under Federal Law to Investigate is Independent from any Investigation Done by the Department of Inspections and Appeals**

At the hearing, Victorian Acres argued that Iowa P & A could obtain the information regarding the investigation of the Iowa Department of Inspections and Appeals (hereinafter "DIA"). Victorian Acres stated that DIA's investigation was unfounded. Prior to this hearing, the DIA had taken the position that their findings regarding unfounded abuse reports could not be produced to Iowa P & A pursuant to Iowa Code section 235B.6(2).

Victorian Acres argues that the allegations of abuse "were fully and finally investigated not only by the licensing agent for the facility, Iowa Department of Inspections and Appeals, but also by the Veterans Administration, an agency committed to payment for services rendered to participant T." (Defendant's Memorandum at 4-5). The fact that these two agencies have investigated the alleged abuse has no bearing on Iowa P & A's authority. Recently the District Court for the Southern District of Iowa ruled in Iowa Protection & Advocacy Services, Inc. v. Rasmussen, No. 4-02-CV90004 at 18 (S.D. Iowa 3/12/2002), that "protection and advocacy systems are established as independent checks on state care and regulation of care for dependent adults. That independent check would become meaningless if a state was allowed to simply legislate away a protection and advocacy system's power to investigate by enacting restrictions." While Iowa P & A has the right to access the DIA's reports of unfounded abuse, Iowa P &A's investigations are independent from that of the DIA and not limited in any way by the DIA's investigation. See Rasmussen. 4-02-CV-90004 at 14-16.

E. **Victorian Acres has Violated the PAIR Program by Denying Iowa P & A Access to its Residents and their Records because Iowa P & A has Determined Probable Cause Exists to Believe the Residents are Being Subjected to Abuse and Neglect**

Victorian Acres argues that Iowa P & A has failed to establish probable cause in this case. (Defendant's Brief at 4-5). Victorian Acres' claim is without merit because it has admitted abuse occurred. At the hearing, witnesses for Victorian Acres testified that a resident sustained an injury to his buttocks. While Victorian Acres alleges that the injury was not caused by the same actions identified by the individual who contacted Iowa P & A, Victorian Acres still admits an injury occurred. Likewise, Victorian Acres admitted that a staff member had been discharged for being verbally abusive to residents.

11

Iowa P & A is the final arbiter of whether probable cause exists. See id. at 15 (noting Iowa P & A makes the determination of whether probable cause exists "as a result of its 'monitoring and other activities,' and *not* a state agency); Arizona Ctr. for Disability Law v. Allen, 197 F.R.D. 689, 693 (D. Ariz. 2000) (concluding under the "P & A laws and regulations" the protection and advocacy systems are the final arbiters of the probable cause which triggers the authority to access the records of an individuals who "may have been subject to abuse or neglect").

In this case, following the call from a concerned person, Iowa P & A determined probable cause existed that a resident at Victorian Acres may have been subject to abuse or neglect based on a report that a staff member dragged a resident outside without his pants on, which resulted in five inch wound to the resident's backside and buttocks. Furthermore, based on additional information from a former staff member, Iowa P & A determined it had probable cause to believe all of the residents of Victorian Acres were being subject to abuse and neglect. Victorian Acres is not the final arbiter of whether probable cause exists, rather Iowa P & A is the final arbiter of whether probable cause exists in this case. See Allen, 197 F.R.D. at 693 (noting protection and advocacy system was the final arbiter of probable cause under the PADD and PAIMI Acts). Given Iowa P & A has determined probable cause exists to believe the residents of Victorian Acres are being subject to abuse and neglect, Iowa P & A should be afforded access to Victorian Acres, and according to the statutes such access should have occurred no later than twenty-four hours after Iowa P & A made its request for access. See Gerard Treatment Programs, L.L.C., 152 F. Supp. 2d at 1172 (holding Iowa P & A's allegations of probable cause were sufficient to support the award of preliminary relief).

The policy and actions of Victorian Acres violate the right of Iowa P & A to meaningful and timely access to the records concerning the reported assault, as well as to the other residents and records of the facility in violation of 29 U.S.C. section 794e, *et seq.*, and Defendant's policy and actions, unless restrained will violate Iowa P & A's right to that information in the event of future probable cause determinations.

### III.   IOWA P & A WILL BE IRREPARABLY HARMED IF VICTORIAN ACRES IS PERMITTED TO CONTINUE TO DENY ACCESS

Victorian Acres' refusal to provide Iowa P & A with access to its residents and their records has irreparably harmed Iowa P &A because it cannot comply with its congressional mandate to investigate the reported abuse and neglect occurring at Victorian Acres. See 29 U.S.C. § 794e(f)(1)-(3).  In Gerard Treatment Programs, L.L.C., a case where the private facility argued that it need not provide access where a guardian objects to Iowa P & A having access, the Court for the Northern District of Iowa considered this issue and found that Iowa P & A had been:

> irreparably harmed by being prevented from pursuing fully its right to access records and patients, even where the guardians do not consent, in pursuit of its duty to investigate circumstances providing probable cause to believe abuse or neglect may be occurring. That harm cannot be fully remedied by damages. Nor should [Iowa P & A] be required to relitigate its right of access over a guardian's objections each time a guardian objects.

Id. 152 F. Supp. 2d at 1173 (citing Czaplewski, 131 F. Supp. 2d at 1051; The Advocacy Ctr. v. Stalder, 128 F. Supp. 2d 358, 368 (M.D. La. 1999)). As in Gerard Treatment Programs, L.L.C., Victorian Acres' refusal to grant Iowa P & A access has caused Iowa P & A irreparable harm.

## IV.   IN BALANCING THE RESPECTIVE HARMS, IT IS CLEAR VICTORIAN ACRES WILL NOT BE HARMED BY ALLOWING IOWA P & A ACCESS TO ITS RESIDENTS AND RECORDS AND ACCESS IS IN THE PUBLIC INTEREST

Victorian Acres contends it will be harmed if Iowa P & A is granted access to its residents and records based on "client confidentiality". When questioned during the hearing of this matter, Victorian Acres could not point to any authority to support its contention. Furthermore, under the PAIR Program regulations,

> (a) all personal information about individuals served by any eligible system under this part, including lists of names, addresses, photographs, and records of evaluation, must be held confidential.
> (b) The eligible system's use of information and records concerning individuals must be limited only to purposes directly connected with the protection and advocacy program, including program evaluation activities. . . .

34 C.F.R. § 381.31 (2001). Clearly, Iowa P & A is legally required to abide by the same confidentiality requirements as Victorian Acres.

Furthermore, while Victorian Acres alleges it is concerned about client confidentiality, at the public hearing of this matter, it released the name of the resident who is the subject of Iowa P & A's investigation. Congress weighed the public interest when it created the PAIR Program and the PADD Act, which supports the granting of a temporary restraining order in this case. See Gerard Treatment Programs, L.L.C., 152 F. Supp. 2d at 1175.

## CONCLUSION

The Court should grant Plaintiff, Iowa Protection and Advocacy Services, Inc.'s request for a temporary restraining order because Plaintiff has proven the merits of its claims, the harm Plaintiff will experience if the documents are not produced is greater than the harm to Defendants, and production of the documents is in accord with the public interest as expressed in

the PAIR Program and PADD Act. For these reasons the Court should enter judgment in favor of Plaintiff.

Sharon K. Malheiro 329506257
Heather L. Palmer PK0016243
The Financial Center
666 Walnut, Suite 2500
Des Moines, Iowa 50309-3993
Telephone: 515/288-2500
Facsimile: 515/243-0654

ATTORNEYS FOR PLAINTIFF

ORIGINAL FILED.

COPY TO:

Douglas A. Fulton
BRADSHAW LAW FIRM
801 Grand, Suite 3700
Des Moines, Iowa 50309-2727

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on March 14, 2002, by:

- ☒ US Mail
- ☐ Hand Delivered
- ☐ Federal Express
- ☐ FAX
- ☐ Overnight Courier
- ☐ Other:

Signature: _____