FILED
DES MOINES, IOWA
02 JUN -4 AM 11: 35

SOUTHERN DISTRICT OF IA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| IOWA PROTECTION AND ADVOCACY SERVICES, INC. | ) ) ) | CIVIL No. 4-02-CV-10112 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| RES-CARE PREMIER, INC., d/b/a VICTORIAN ACRES REHABILITATION, | ) ) ) ) | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF** |
| Defendant. | ) ) | |

## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| FACTUAL BACKGROUND | 2 |
| I. IOWA PROTECTION AND ADVOCACY HAS PROBABLE CAUSE TO BELIEVE THAT THE HEALTH AND SAFETY OF OTHER AT THE FACILITY MAY BE IN JEOPARDY AND THEREFORE CAN EXPAND THE INVESTIGATION | 3 |
| II. THE GUARDIANS' REFUSAL TO ALLOW PLAINTIFF TO INTERVIEW ITS WARD IS NOT CONTROLLING | 5 |

#851882

## FACTUAL BACKGROUND

On March 22, 2002, this Court issued an Order finding that the Iowa Protection and Advocacy Agency had probable cause for investigating an incident of alleged physical abuse of a resident of the facility. In that the Order, the Court "immediately and temporarily enjoined [the Defendant] from preventing or interfering with access by appropriately identified Iowa P & A representatives to defendant's records concerning resident "T." Court's order at 12. The Court further held that "if, after reviewing "T's" records, Iowa P & A representatives conclude they have probable cause to believe that other covered individuals residing in Victorian Acres have been subject to abuse or neglect, they may initiate the appropriate procedures to gain access to those records as well."

The Plaintiff's received some of "T's" records on March 28 with the remainder of the treatment records on May 10, 2002. After reviewing the March 28th records and interviewing witnesses, including a former employee and the guardians of another resident, the Plaintiff concluded that the facts available to it indicate that the behavior management and restraint technique used on "T" which caused a physical injury has been and currently may be used for other residents of the facility. As result, the Plaintiff has attempted to expand its investigation. As a first step to expanding the investigation, the Plaintiff asked for the names and addresses of the guardians. On May 10, 2002, the Plaintiff received the names and addresses of the guardians. The Plaintiff received a copy of the Defendant's policies and procedures on May 28, 2002. The Defendant has refused to allow the Plaintiff an expanded probable cause investigation. On May 28, 2002, when the Plaintiff attempted to interview a resident of the facility, the Defendant refused citing a letter from the resident's guardians.

# I. THE PLAINTIFF HAS INFORMATION FACTS TO ESTABLISH PROBABLE CAUSE TO EXPAND THE INVESTIGATION.

To expand the investigation, the Plaintiff has the burden of persuading the Court that additional facts exist to demonstrate that the health and safety of the residents of the facility may be in jeopardy. Pennsylvania Protection & Advocacy, Inc. v. Royer Greaves School for Blind, 1999 WL 179797 (E.D. Pa. 1999). Probable cause has been defined as "reasonable ground[s] for belief that an individual with developmental disabilities has been, or may be, subject to abuse or neglect. The individual making such a determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect." 45 C.F.R. § 1386.19. It is clear that Iowa P & A is the final arbiter of a finding of probable cause to initiate an investigation. Arizona Ctr. For Disability Law v. Allen, 197 F.R.D. 689, 693 (D. Ariz. 2000). In this Court's earlier Order, the Court held that to establish expanded probable cause, it would be necessary for the P & A to show that other residents have been affected, or that the alleged actions resulted from a policy or procedure of Defendant. Order at 10.

Clearly, the facts set forth at the hearing show that Iowa P & A met this standard. Mr. Parr, the investigator for Iowa P & A, testified that he has received training in the areas of abuse investigation both in college and in his professional career. He also testified at the hearing that he was told by a former employee as well as guardians of residents that the behavior management and restraint technique used during the incident with "T" is also used for other residents. He stated that the former employee told him that the behavior management and restraint technique used with "T" is part of the

3

Defendant's policies. Mr. Parr also testified that interviews conducted by the Department of Inspections and Appeals contained information that other residents have been subjected to similar treatment. In fact, Mr. Parr quoted from the Department of Inspection and Appeals report that placing the resident in his wheelchair and removing him to an area of low stimulation was part of the "program plan." This technique includes forcibly taking a resident who is experiencing aggressive behavior to an area outside the house. The testimony of the Defendant's witness, April Markle confirmed that physically re-directing an aggressive resident and moving the resident to an area outside of the building is a technique that is used.

Mr. Parr and Mr. Kantu testified that use of this type of behavior management and restraint is not the preferred method, and that there are other less injurious ways to manage the situation. In fact, as Mr. Parr testified, the Department of Inspections and Appeals found that "it would seem wise to have staff back off and let the resident calm rather than continue the aggressive, assaultive behavior by trying to pick him up and put him in the wheelchair while fighting."

While Ms. Markle prefers to classify the incident as an accident, the end result is that the behavior management and restraint technique used by the Defendant resulted in a physical injury to a resident. The undisputed facts also show that he resident's guardians were not informed of the incident for almost a month.

Because it is undisputed that this behavior management and restraint technique remains a part of the Defendant's program plan, the Plaintiff has probable cause to believe that other residents may be at risk of injury. The Plaintiff also has probable cause

to believe that given the time delay in reporting the injury to the resident's guardians, the risk that such injury may go unreported is possible. Therefore, based upon the foregoing, the Court should issue an order enjoining the Defendant from interfering with the Plaintiff's expanded probable cause investigation.

## II. THE GUARDIANS' REFUSAL TO ALLOW PLAINTIFF TO INTERVIEW THE RESIDENT IS NOT CONTROLLING.

On May 24, 2002, the Plaintiff notified Defendant of its intention to interview a resident of the facility about the incident involving resident "T." The Plaintiff notified the guardians of its intention to meet with the resident. The interview was scheduled for May 28 at 2:00 p.m. When the Plaintiff arrived, the Defendant refused access to the resident and produced a note from the resident's guardian denying access.

In Disability Law Center, Inc. v. Riel, the Court stated emphatically that the DDA Act does not recognize guardians as the sole decision makers in issue relating to a P & A's right of access. 130 F. Supp.2d 294, 299 (D. Mass. 2001). The Court held that the Act was not intended to grant a guardian power to block access to an individual's records or the individual. Id. Similarly, in Pennsylvania Protection and Advocacy, Inc. v. Royer-Greaves School for the Blind, 1999 WL 179797, the Court found that P & A's have a right to access in the event a guardian is not responsive or cooperative. Id. at 10. In fact, the Court in Riel stated that "The legislative history supports the statutory interpretation that Congress intended to let the P & A's obligations trump the guardian's wishes. 130 F. Supp. at 297 (citing S.Rep. No. 101-367 at 33 (1990)).

When faced with a similar situation in Iowa Protection & Advocacy Services, Inc. v. Gerard Treatment Programs, L.L.C., 152 F. Supp.2d 1150 (N.D. Iowa 2001), the Court

held that the Defendant's "interests in barring access to records and patients where the guardian objects is significantly diminished by the fact that [the Defendant] would be permitting access where federal law . . . and any order of this court granting a preliminary injunction require it to provide such access. Id. at 1175. The Court further found that "the weight of the objecting guardians' interest in not permitting IPAS such access has already been considered by Congress in enacting the amendments to the DDA and the PAMII Act that permit a P & A like IPAS to have such access even where a guardian objects." Id. In so finding, the Court held that "the public interest, as weighed by Congress, weighs in favor of . . . permitting IPAS to obtain access to patients . . . even where guardians of the patients object to such access." Id.

Based upon the foregoing, the objections of the guardian cannot be the basis for denial of access to the resident by Iowa P & A. Therefore, this Court should issue an order enjoining the Defendant from refusing to permit the Iowa P & A access to the resident.

*Sharon K. Malheiro*
Sharon K. Malheiro
The Financial Center
666 Walnut, Suite 2500
Des Moines, Iowa 50309-3993
Telephone: 515/288-2500
Facsimile: 515/243-0654
ATTORNEY FOR PLAINTIFF

COPY TO:
Douglas A. Fulton
Bradshaw Law Firm
801 Grand Avenue, Suite 3700
Des Moines, Iowa 50309
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE
The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on _____ 20__
By: ☒ U.S. Mail        ☐ FAX
    ☐ Hand Delivered   ☐ Overnight Courier
    ☐ Certified Mail   ☐ Other:
Signature _____