

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| IOWA PROTECTION AND ADVOCACY SERVICES, INC., | Civil No. 4-02-CV-10112 |
| Plaintiff, | |
| vs. | ORDER RE: PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF |
| RES-CARE PREMIER, INC. d/b/a VICTORIAN ACRES REHABILITATION, | |
| Defendant. | |

THE COURT HAS BEFORE IT plaintiff Iowa Protection and Advocacy Services, Inc.'s ("Iowa P & A") request for modification and/or clarification of this Court's March 22, 2002 Order granting plaintiff's request for a preliminary injunction. Defendant has resisted the request. A hearing was held May 29, 2002, and post-hearing memoranda were filed by the parties.

I. **BACKGROUND**

Plaintiff Iowa Protection & Advocacy Services, Inc. ("Iowa P & A"), as relevant here, is a protection and advocacy system designated by the state of Iowa to provide protection and advocacy services to persons with disabilities pursuant to the Protection and Advocacy of Individual Rights Act, 29 U.S.C. § 794e *et seq.* ("PAIR"). Defendant Res-Care Premier, Inc. operates Victorian Acres Rehabilitation in Altoona, Iowa, which provides residential rehabilitation services to persons with traumatic brain injuries.

On February 26, 2002, Iowa P & A filed a complaint seeking declaratory and injunctive relief, urging this Court to declare that Res-Care's "policies, regulations, practices and conduct of interfering with and denying Iowa P & A's proper and immediate access violates [sic] 29 U.S.C. § 794e and 42 U.S.C. § 105041 [sic], *et seq.*," and to both preliminarily and permanently enjoin Res-Care from denying Iowa P & A its requested access. Complaint ¶¶ 35-37. In response, Res-Care did not contest Iowa P & A's general authority to investigate allegations of abuse and neglect, but disputed that probable cause existed to initiate an investigation into the alleged incident involving resident "T."

The Court held a hearing on Iowa P & A's request for preliminary injunction on March 11, 2002. On March 22, 2002, the Court found that Iowa P & A had established probable cause to investigate the alleged incident involving resident "T." It then preliminarily enjoined defendant from preventing or interfering with access by appropriately identified Iowa P & A representatives to defendant's records concerning resident "T." March 22, 2002 slip op. p.12. The Court declined at that time to grant Iowa P & A's request for access to all Victorian Acres patients' records but ordered that "if, after reviewing resident "T's" records, Iowa P & A representatives conclude they have probable cause to believe that other covered individuals residing in Victorian Acres have been subject to abuse or neglect, they may initiate the appropriate procedures to gain access to those records as well." *Id.*

Following its review of resident "T's" records, Iowa P & A is presently seeking access to interview another resident (resident "X") concerning the alleged incident involving resident "T." Responding to Iowa P & A's request, defendant has produced a letter directed to Iowa P & A from resident "X's" guardian stating, "We do not feel it is in [resident "X's"] best interest to be

2

interviewed . . . ." It is evident from the guardian's letter that resident "X" has been interviewed by other investigators concerning "'abuse of patients' issues." The guardian further asserts that, "There isn't anything new for [resident "X"] to say. You may use what he has already reported to others as his statement." On the basis of the guardian's wishes, defendant has refused to permit Iowa P & A to interview resident "X" concerning the incident involving resident "T."[1]

Iowa P & A also seeks access to review the records of all current residents at Victorian Acres, alleging that the facility has a policy of inappropriately using physical restraint to control residents and that such policy constitutes abuse or neglect, and/or places residents' health or safety in serious and immediate jeopardy. Defendant has resisted Iowa P & A's request for broader access to patient records on the bases that A) Iowa P & A does not have probable cause to believe 1) that defendant has a policy of using inappropriate restraints to control residents, 2) that such a policy, if it exists, constitutes abuse or neglect, or 3) that such policy, if it exists, places residents' health or safety in serious and immediate jeopardy; and B) any probable cause determination necessary to access records must be made on an individual or patient-by-patient basis rather than allowing access to the entire patient population's records.[2]

## II.  APPLICABLE LAW & DISCUSSION

As set forth in this Court's March 22, 2002 Order, Iowa P & A, as a protection and advocacy system operating under the Protection and Advocacy of Individual Rights Act, 29 U.S.C. §§ 794e

---

[1] Neither party has attempted to introduce evidence that resident "X" himself has either agreed or refused to speak with Iowa P & A representatives, nor has any evidence been introduced as to whether resident "X" has the capacity to rationally make such a decision.

[2] The Court notes that defendant made its written policies available to Iowa P & A for inspection, but plaintiff failed to avail itself of the opportunity to do so. Hrg. Trans. May 29, 2002, p.12.

3

*et seq.* ("PAIR"), is charged with providing and has the authority to provide to persons eligible for services under PAIR[3] the same general protection and advocacy services available under the Developmental Disabilities Assistance Bill of Rights Act, 42 U.S.C. § 15041 *et seq.* ("PADD").[4] *See* 29 U.S.C. § 794e(f)(2). As such, the Court finds the regulations promulgated under PADD, 45 C.F.R. § 1386 *et seq.*, are applicable with equal force to a protection and advocacy system operating under PAIR. Furthermore, these "properly promulgated, substantive agency regulations have the 'force and effect of law.' This doctrine is so well established that agency regulations implementing federal statutes have been held to pre-empt state law under the Supremacy Clause." *Chrysler Corp. v. Brown*, 441 U.S. 281, 295-96 (1979) (footnotes omitted).

The standards for evaluating a motion for preliminary injunction were set forth in this Court's March 22, 2002 order, and will not be repeated here. This order addresses only the probability of success on the merits. Neither party has presented evidence or argument that would cause this Court to modify its March 22, 2002 analysis of the remaining three *Dataphase* factors for a preliminary injunction.

---

[3] *See* 29 U.S.C. §§ 794e(a)(1)(A) - (B)(ii).

[4] Defendant cites PADD as 42 U.S.C. §6000, *et seq.* The Court notes, however, that PADD was repealed and reenacted pursuant to the Developmental Disabilities Assistance Bill of Rights Act of 2000, PL 106-402, October 30, 2000, 114 Stat 1677, codified at 42 U.S.C. § 15001, *et seq.* It appears that most (if not all) of the provisions which are applicable in this matter remained substantively the same but were merely renumbered. Further, the Court notes that many of the decisions of other courts addressing PADD cited the previously codified Act at 42 U.S.C. § 6000, *et seq.* All citations to PADD in this order are to the current statute, except where indicated.

A. Iowa P & A's Right of Access to Interview Resident "X"

As a condition to the receipt of federal funds, Congress required states to establish protection and advocacy systems to protect the rights of institutionalized disabled individuals in light of the horrific conditions of institutional care in the early 1970s:

> Disturbed by the inhumane and despicable conditions discovered at New Yorks's Willowbrook State School for persons with developmental disabilities, Congress enacted the Developmental Disabilities Assistance and Bill of Rights Act . . . to protect the human and civil rights of this vulnerable population. . . . Pursuant to the Act, a state cannot receive federal funds for services to persons with developmental disabilities unless it has established a protection and advocacy . . . system.

*Alabama Disabilities Advocacy Program v. J.S. Tarwarter Developmental Center*, 97 F.3d 492, 494 (11th Cir. 1996) (internal citations to outdated version of the Act omitted). Although repealed and reenacted in 2000, the Developmental Disabilities Assistance Bill of Rights Act continues to require states to establish and maintain independent protection and advocacy systems as a prerequisite to the receipt of federal funds. 42 U.S.C. § 15043(a)(1) and (2).

To ensure that P & A systems established under PADD and PAIR are able to effectively provide comprehensive protection and advocacy services to disabled individuals,[5] Congress required that such P & A systems have authority to conduct routine visits with and provide information to disabled individuals receiving services in any location in which such services are provided,[6] as well

---

[5] 42 U.S.C. § 15043(a)(2)(A)(i) requires that a P & A system shall have the authority to "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within the State who are or who may be eligible for treatment, services, or habilitation, or who are being considered for a change in living arrangements, . . . ."

[6] 42 U.S.C. § 15043(a)(2)(A)(ii) provides that a P & A system shall have the authority to "provide information on and referral to programs and services addressing the needs of

5

as the authority to investigate incidents reported to the system or which the system has probable cause to believe occurred.[7] Regulations promulgated under PADD specifically provide that, in conducting routine protection and advocacy functions to provide information to disabled individuals and to monitor the services provided by a facility to disabled individuals, P & A systems "shall have unaccompanied access to all residents of a facility at reasonable times, which at a minimum shall include normal working hours and visiting hours, . . . ." 45 C.F.R. §§ 1386.22(g)(1) and (2).[8] This "unaccompanied access to residents of a facility shall include the opportunity to meet and communicate privately with such individuals regularly, both formally and informally, by telephone, mail and in person." 45 C.F.R. §1386.22(h). When conducting a full investigation[9] of a reported

---

individuals with [] disabilities . . . ." *See also* 42 U.S.C. § 15043(a)(2)(G) which provides that a P & A system shall "have access at reasonable times to any individual with a [] disability in a location in which services, support, and other assistance are provided to such an individual, . . . ."

[7] 42 U.S.C. § 15043(a)(2)(B) provides that a P & A system shall "have the authority to investigate incidents of abuse and neglect of individuals with [] disabilities if the incidents are reported to the system or if there is probable cause to believe that such incident occurred . . . ."

[8] The Court notes that the administrative regulation, 45 C.F.R. § 1386.22(g), references the congressional enactment of the Developmental Disabilities Assistance Bill of Rights Act of 2000 at "section 142(a)(2)(H)", referring to that section of Pub.L. 106-402, 114 Stat. 1714, Oct. 30, 2000. The Court believes that the regulation contains an error in this reference and is clearly meant to refer to section 143(a)(2)(H) of the Act, which is codified at 42 U.S.C. § 15043(a)(2)(H).

[9] "Full Investigation means access to facilities, clients and records authorized under these regulations, that is necessary for a protection and advocacy (P&A) system to make a determination about whether alleged or suspected instances of abuse and neglect are taking place or have taken place. Full investigations may by conducted independently or in cooperation with other agencies authorized to conduct similar investigations." 45 C.F.R. § 1386.19.

incident or when the P & A system has probable cause to believe an individual with a disability has been abused or neglected, 45 C.F.R. § 1386.22(f)[10] provides that:

> A system shall have *reasonable unaccompanied access* to public and private facilities which provide services, supports, and other assistance for individuals with [] disabilities in the State when necessary to conduct a full investigation of an incident of abuse or neglect under section 142(a)(2)(B) [sic] of the Act. This authority shall include the opportunity: to *interview any facility service recipient*, employee, or other person, including the person thought to be the victim of such abuse, *who might be reasonably believed by the system to have knowledge of the incident under investigation*; and to inspect, view and photograph all areas of the facility's premises that might be reasonably believed by the system to have been connected with the incident under investigation.

[emphases added].

The first issue before this Court -- whether defendant must permit Iowa P & A access to its facility to interview resident "X" over the objection of resident "X's" guardian -- is not specifically addressed by the statute and regulations. *See West Virginia Advocates, Inc. v. Appalachian Community Health Center, Inc.*, 447 S.E.2d 606, 611 (W.Vir. 1994). This Court finds, however, that ensuring P & A systems have "reasonable unaccompanied access" to facilities, when conducting an investigation of a complaint or upon probable cause to believe that abuse and neglect is occurring, requires that Iowa P & A be permitted to interview resident "X" in furtherance of its investigation of the alleged abuse and neglect of resident "T."

Furthermore, no showing has been made that resident "X's" guardian has the legal authority, pursuant to his appointment as guardian, to deny Iowa P & A's request for access to speak with his

---

[10] In the Court's opinion, 45 C.F.R. § 1386.22(f) also contains an erroneous reference to PADD at "section 142(a)(2)(B)." The Court believes this references is meant to refer to section 143(a)(2)(B) of PADD, codified at 42 U.S.C. § 15043(a)(2)(B).

ward. The federal statute and regulations do not address the guardian's authority with regard to access for interviews, but merely provide the guardian may consent to the P & A system's access to records.[11] Additionally, the Court notes that the scope and extent of the guardian's powers have not been established in this proceeding as the Court has not been provided with any Letters of Appointment, nor has either party provided any argument concerning the effect of an appointment of a guardian under Iowa law. Absent a persuasive showing that resident "X's" guardian is empowered by either the federal statute in question or by his powers as guardian under Iowa law,[12] the Court finds no basis to deny Iowa P & A's request for access to interview resident "X."

B.     Iowa P & A's Request for Broad Access to Records

Iowa P & A asserts that it is entitled to review the records of all Victorian Acres residents based on its finding of probable cause to believe that abuse and neglect have occurred at the facility. Such a finding of probable cause may, in some circumstances, support a P & A's right to access of disabled individuals' records. Even if probable cause has been established, however, Iowa P & A must meet *all* the conditions required under PADD for access to residents' records, not just the

---

[11] It is not at all clear to this Court, however, that a guardian's consent is necessary to release his wards records. While such consent may be sufficient, it may not be required under all circumstances, particularly where the ward, himself, has competently consented to the release of his own records, as well as other circumstances as set forth in PADD.

[12] To the extent Iowa law empowers a guardian to deny a P & A system access to his ward, this Court believes, but need not decide here, that state guardianship law may be preempted to the extent it conflicts with a P & A system's broad authority under the protection and advocacy program established by Congress in PADD. *See Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F.Supp.2d 1039, 1048 (E.D. Wis. 2001); *Disability Law Center v. Riel*, 130 F.Supp.2d 294, 297-301 (D.Mass. 2001); *West Virginia Advocates v. Appalachian Community Health Center, Inc.*, 447 S.E.2d 606, 610-12 (W.Vir. 1994).

requirement of probable cause. Most notably, Iowa P & A has not been given the consent of either the disabled individuals or their guardians to access the records of such disabled individuals.

42 U.S.C. §§ 15043(a)(2)(I) and (J) provide alternative means by which a P & A system may gain access to a disabled individual's records. To gain access under subsection (I), the P & A must show one of three possible scenarios has been met. First, a P & A may gain access with the consent of the individual or his guardian. 42 U.S.C. § 15043(a)(2)(I)(i). Here, Iowa P & A has not provided proof of such consent.

Secondly, the P & A may show that the individual is unable to authorize access, has no guardian or the guardian must be the state, and either a complaint must have been received or probable cause must exist to believe that such individual has been subjected to abuse and neglect. 42 U.S.C. § 15043(a)(2)(I)(ii). Here, Iowa P & A has not demonstrated that any of the residents of Victorian Acres are unable to authorize access, and/or that they lack guardians or that their guardian is the state. Thus, even if probable cause was established, the other elements of this provision permitting access have not been met.

Thirdly, the P & A may show that an individual has a guardian or other representative, and either a complaint had been received or probable cause must exist to believe that such individual has been subjected to abuse and neglect. Additionally, the guardian must have been contacted by the P & A system, the P & A must have offered assistance to the guardian to resolve the situation, and the guardian must have refused to act on behalf of the disabled individual. 42 U.S.C. § 15043(a)(2)(I)(iii). Here, Iowa P & A has not demonstrated that it has contacted all or even any of the guardians of the Victorian Acres residents for whom it seeks access to records, nor has it shown

9

that the guardians of such residents have refused to act on behalf of their wards. As such, the Court need not reach the additional element of probable cause.

Finally, a P & A system's access to records under 42 U.S.C. § 15043(a)(2)(J)(ii) requires that the system must have probable cause to believe that the health or safety of the individual residents is in *serious and immediate* jeopardy, or the resident for whom the P & A system seeks access to records must be deceased. There is no evidence in this case of serious and immediate jeopardy or deaths at defendant's facility. As previously noted by the Court, Iowa P & A's nearly one-month delay in filing this action belies any reasonable belief that Victorian Acres residents' health or safety are or were in serious and immediate jeopardy. While a P & A may have, as some courts have found, the sole discretion to find probable cause to believe that an individual resident has been subjected to abuse or neglect, such a finding must be based on "reasonable inferences." 42 C.F.R. § 1386.19 (definition of "Probable Cause").

During the May 29, 2002 hearing, Iowa P & A alleged that defendant has an "inappropriate policy" of using restraints. However, no where in the record does Iowa P & A demonstrate, or even allege, that defendant's policy results in "the use of excessive force" nor that such policy is "not in compliance with Federal and State laws and regulations" as required by the regulations. (*See* Hrg. Trans. May 29, 2002, p.6-7).[13] Furthermore, during the hearing, David Parr quoted from the Iowa

---

[13] Iowa P & A has not met the threshold of probable cause to believe abuse or neglect has occurred with regard to the patient population of Victorian Acres, as those terms are defined by the administrative regulations. Specifically,

> [a]buse means any act or failure to act which was performed, or which was failed to be performed, *knowingly, recklessly, or intentionally*, and which caused or may have caused, injury or death to an individual with [] disabilities, and includes such act as: Verbal, nonverbal, mental and emotional harassment; rape or

DIA's findings in its investigation that "It could not be determined if there was *intent* to punish the resident rather than provide a safe environment as indicated by staff and the program plan." (Hrg. Trans. May 29, 2002, p.16-17) (emphasis added). Iowa P & A has made no allegation that the actions of defendant's staff were taken knowingly, recklessly, or intentionally, as required to find abuse as defined in the regulations. Without any such allegations and evidence in the record to support them, there is not a "reasonable ground for belief" that abuse or neglect has occurred. Absent such a showing, this Court cannot enjoin defendant from denying Iowa P & A access to all of its residents' records.

### III. CONCLUSION

For the reasons set forth above, plaintiff Iowa P & A's request for modification and/or clarification of this Court's previously issued preliminary injunction is granted in part and denied in part as follows:

1. Defendant is immediately and preliminarily enjoined from preventing properly identified Iowa P & A representatives from meeting with resident "X" for purposes of conducting an investigation into the alleged incident of abuse and neglect concerning resident "T."

2. Plaintiff has not demonstrated a sufficient probability of success on the merits to warrant a preliminary injunction to prevent defendant from denying facility-wide

---

sexual assault; striking; *the use of excessive force when placing such an individual in bodily restraints; the use of bodily or chemical restraints which is not in compliance with Federal and State laws and regulations* or any other practice which is likely to cause immediate physical or psychological harm or result in long term harm if such practices continue.

45 C.F.R. § 1386.19. [emphases added]. The Court further notes that the administrative regulations also define "neglect," but finds that none of Iowa P & A's specific allegations merit discussion of the administrative agency's definition of neglect.

11

access to records. Accordingly, this portion of plaintiff's request for modification and/or clarification of this Court's March 22, 2002 order is denied.

IT IS SO ORDERED.

Dated this 8th day of July, 2002.

_____
RONALD E. LONGSTAFF, CHIEF JUDGE
UNITED STATES DISTRICT COURT§